CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
NOV 2 2 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| ROY V. ROBERTSON, ) | |
| ) | Civil Action No. 5:05-CV-00009 |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| JO ANNE BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | By: Samuel G. Wilson |
| Defendant. ) | United States District Judge |

Plaintiff, Roy V. Robertson, brings this action challenging the final decision of the Commissioner of Social Security denying Robertson's 2002 claim for Supplemental Security Income (SSI) payments under the Social Security Act. An Administrative Law Judge (ALJ) found that Robertson was engaging in "substantial gainful activity" as the sole owner and operator of a turkey farm at the time his insured status expired and thus failed to satisfy the first step of the sequential evaluation.[1] The Commissioner of Social Security adopted that opinion as her final decision. See 42 U.S.C. § 405 (g). The United States Magistrate Judge has filed a report pursuant to 28 U.S.C. § 636(b)(1)(B), recommending that the court reverse the decision and remand the case solely for the calculation of benefits. The Commissioner contends that substantial evidence supports the ALJ's determination that Robertson was able to engage in substantial gainful activity and has objected to the Magistrate Judge's report. The court adopts the Magistrate Judge's report in part but vacates and remands for further consideration at the first step of the sequential evaluation.

---

[1] The first inquiry in the sequential evaluation is whether the claimant is performing substantial gainful work. If so, the claimant is not disabled. 20 C.F.R. § 404.1520.

I.

Robertson is fifty-two years old and is a high school graduate with some post high school education at a community college. His past work experience includes employment as a truck driver and farmer. Robertson claims that he suffers from a back disorder, hip pain, depression, headaches, chronic liver disease, and hepatitis-C infection and that his condition became disabling in March 2001.

Robertson's employment as a truck driver ended in 1997 when he took over operation of a family-owned turkey farm. He claims that he operated the turkey farm until March 29, 2001, at which point he claims his back disorder and hepatitis infection forced him to significantly scale back his involvement. Prior to March 2001, Robertson claims that he was working three to four hours daily and that by March 2001, he was unable to work for more than one to two hours each day. His girlfriend, Cathy Fairfield, began running the farm in March 2001, and Robertson's limited involvement included activities such as calling in feed orders, calling to check on equipment or the turkey houses, and occasionally walking to the turkey houses.

Meanwhile, Robertson filed his disability claim on October 28, 2002, maintaining that he had become disabled on March 29, 2001. The SSA denied the claim initially and on reconsideration. Robertson then requested a hearing, which was held on May 29, 2004. Before the hearing, Robertson's medical files were forwarded to Dr. Charles Cook, a medical expert. Dr. Cook testified at the hearing that Robertson's chronic hepatitis C condition was a mild impairment because at the time of the hearing, Robertson was "viral-load free." On the other hand, Dr. Cook testified that Robertson's back condition met the regulation listing, "which deals

with lumbar stenosis resulting in pseudoclaudication established by an acceptable imaging and manifested by non-radicular pain." The ALJ stated that he did not need further medical testimony but that he was "still wrestling with notations" from medical records that noted Robertson's involvement with the family farm.[2]

When asked about the medical record notations, Robertson testified that he made the statements when he was seeking hepatitis C treatment. He testified that Danielle Harris and Colleen Greene, both physician assistants at the University of Virginia Medical Center, told him that he would have to "paint a rosy picture" and "show that [he was] able to handle the [hepatitis C] treatment." Thus, Robertson claims that he was "kind of under doctor's orders" to portray his life as active and involved so that he could receive treatment for his hepatitis C condition.

The ALJ ultimately found that Robertson was engaging in substantial gainful activity as the sole owner and operator of a turkey farm during the relevant time period; that Robertson's work activity involved significant physical or mental activity for pay or profit; that Robertson's work activity constituted substantial gainful activity within the meaning of the regulations; and that Robertson had not been unable to engage in substantial gainful activity for any continuous period of at least 12 months. The ALJ noted Robertson's own testimony that he handled the

---

[2]The ALJ was referring to a number of medical record notations concerning Robertson's involvement in the family farm. On March 30, 2001, Robertson visited Dr. Carl Berg for further evaluation of his hepatitis C condition, and Dr. Berg noted that Robertson "works as a full time farmer." At an August 2, 2001, appointment, Dr. Berg noted that Robertson "is very active and works on his own farm raising cattle and horses and turkeys." Moreover, at a November 20, 2002, appointment, Dr. Stephen Caldwell, also treating Robertson for hepatitis C, stated that Robertson "continues to work his family turkey farm which has been in the family for the last 200 years."

3

"business end" of the farm operation[3] and that Robertson's tax returns "show that he acknowledged participating materially in the operation of the business through taxable year 2003." Because the ALJ determined that Robertson was engaged in substantial gainful activity as a self-employed person at the time his insured status expired, the ALJ found that it was "unnecessary to proceed through the remaining steps in the sequential evaluation process."

Based on these findings, the ALJ denied benefits, and after the Appeals Council denied Robertson's request for review, the Commissioner adopted the decision. Roberston appealed, and the court referred the matter to the Magistrate Judge, who found that the ALJ's decision was not supported by substantial evidence and recommended that the court reverse the ALJ's decision and remand the case solely for calculation of benefits. The Magistrate Judge concluded that the ALJ's decision was not supported by substantial evidence because the ALJ incorrectly applied the test to determine whether Robertson was engaged in substantial gainful activity and misapplied Robertson's acknowledgment of "material participation" on his tax forms.[4]

---

[3]Robertson contends that the ALJ used the phrase "business end" and that Robertson did not describe his limited farm involvement in that manner. Describing his farm involvement, Robertson testified that he was "still doing like orders." In response, the ALJ asked Robertson whether he was still "doing the business end of it." Robertson replied yes, although he noted that the poultry was on contract and, thus, "they do most everything, but you have to verify feed inventories and call in feed inventories. You have to order gas, and you have to do odds and ends like that, order equipment to have it UPS'd [sic] in to repair equipment and that type of thing, order diesel fuel."

[4]The ALJ stated that the Robertson's acknowledgment of "material participation" on his tax forms was "consistent with [the] testimony [that Robertson was handling the "business end" of the farm]." The Magistrate Judge finds fault with this comparison, claiming that "material participation" does not have the same meaning as "significant services," as defined in the Social Security Regulations and, thus, "does not constitute substantial evidence to support a finding that [Robertson] was performing the 'significant services' equivalent to . . . 20 C.F.R. § 404.1575(a)(1)." Although it is debatable whether the Social Security definition of "significant services" is the same as the IRS definition of "material participation," the court sees no reason

4

## II.

The Social Security Regulations set forth three tests to determine whether a self-employed claimant has engaged in substantial gainful activity. See 20 C.F.R. § 404.1575. If the claimant has not engaged in substantial gainful activity under test one, the ALJ then considers the issue under test two and, if necessary, test three. The first test provides that a claimant has engaged in substantial gainful activity if the claimant "render[s] services that are significant to the operation of the business and receive[s] a substantial income from the business." 20 C.F.R. § 404.1575(a)(1). Because the ALJ applied only the first test, the court will not address tests two or three but notes that the application of these tests may be proper upon remand.[5]

Application of test one requires a two-pronged evaluation concerning whether the claimant has provided "significant services" to the business and whether the claimant has received "substantial income" from the business. 20 C.F.R. § 404.1575. The regulations provide, in part, that if the claimant is not a farm landlord and the business involves the services of more than one person, then the claimant is rendering significant services if he "contribute[s] more than half the total time required for the management of the business" or "more than 45

---

why the ALJ should not consider Robertson's acknowledgment of "material participation" as an evidentiary factor in applying the Social Security definition of "significant services."

[5]The second test provides that a claimant has engaged in substantial gainful activity if the claimant's "activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood." 20 C.F.R. § 404.1575(a)(2). The third test provides that a claimant has engaged in substantial gainful activity if the claimant's "work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing." 20 C.F.R. § 404.1575(a)(3).

5

hours a month regardless of the total management time required by the business." 20 C.F.R. § 404.1575(b)(1). Income is "substantial" if after applicable deductions it averages more than the amounts prescribed by 20 C.F.R. § 404.1574(b)(2) or it "averages less than the amounts described in 20 C.F.R. § 404.1574(b)(2) but it is either comparable to what it was before [the claimant] became seriously impaired if [the ALJ] had not considered [the claimant's] earnings or is comparable to that of unimpaired self-employed persons in [the claimant's] community who are in the same or a similar business." Id.

Here, the ALJ did not address whether Robertson received "substantial income" from the turkey farm. Though the ALJ references the gross farm income from 2002 and 2003, he did not determine whether that income constituted substantial income under the regulations. Instead, the ALJ stated only that "[a]lthough the farm has not returned a profit in three successive years, the claimant is clearly the driving force behind the business, making all management decisions and overseeing its operation." However, it is far from clear on the record before the court that Robertson's income was not substantial income under the regulations or that he was not engaging in substantial gainful activity under the second or third tests for determining whether a self-employed claimant was engaging in substantial gainful activity. Thus, rather than reverse and remand the decision for calculation of benefits as the Magistrate Judge has recommended, the court will remand for further consideration at the first step of the sequential evaluation.

Case 5:05-cv-00009-SGW-BWC Document 17 Filed 11/22/05 Page 6 of 7 Pageid#: 96

## III.

For the reasons stated herein, the court vacates the ALJ's decision and remands this case for further proceedings in accordance with this opinion..

       **ENTER**: This 24 day of November 2005.

                                                UNITED STATES DISTRICT JUDGE